Filed 7/15/13  P. v. Talamantez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR TALAMANTEZ,<br><br>    Defendant and Appellant. | F065024<br><br>(Super. Ct. No. MF9744B)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Cornell, Acting P.J., Kane, J. and Franson, J.

A jury found appellant Victor Talamantez guilty of grand theft by larceny (Pen. Code, § 487, subd. (a)).[1]  The trial court sentenced Talamantez to the upper term of three years, to serve the first 18 months in custody and the remainder to be served on mandatory supervision.

On appeal, Talamantez argues only that there is insufficient evidence to uphold the conviction.  We disagree and affirm.

## STATEMENT OF THE FACTS

On July 23, 2011, Ernest Dean Soest was driving to the 57-acre storage facility he operated in Mojave when he noticed Talamantez and another man outside a white pickup near the property's fenced gate.  The two men were trying to dislodge the truck from some sort of obstruction.  The chain securing the fenced entrance had been broken.

The bed of the white truck had a load of metal pallets belonging to the storage facility.  After dislodging the truck, Talamantez and his companion sped past Soest in the truck and continued down the road away from the storage facility.  Soest chased the two for about five miles until the truck stopped after many of the pallets slid out of the truck bed.

Soest then approached the truck on foot and saw Talamantez and his companion run away from the white pickup.  Talamantez continued to run; his companion turned and approached Soest and tried to hit him with a piece of wood from the back of Soest's vehicle.  After knocking Soest down, the companion pummeled him with his fists.  The companion then took Soests's vehicle and drove away.  The pallets were later recovered.

## DISCUSSION

*Sufficiency of the Evidence*

Talamantez contends there was insufficient evidence of the value of the stolen property to support a conviction for grand theft.  We disagree.

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

We review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence (evidence of reasonable, credible and solid value) based upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Osband* (1996) 13 Cal.4th 622, 690.)

Theft is divided into two categories: grand theft and petty theft. (§ 486.) Grand theft is taking of personal property of a "reasonable and fair market value" exceeding $950. (§§ 484, 487, subd. (a).) The value of an item of stolen personal property, whether new or used, is measured at the time and place of its theft. (*People v. Pena* (1977) 68 Cal.App.3d 100, 102-104.) "Put another way, 'fair market value' means the highest price obtainable in the market place rather than the lowest price or the average price." (*Id.* at p. 104.)

In some instances, fair market value is synonymous with replacement value. (*People v. Renfro* (1967) 250 Cal.App.2d 921, 924.) For example, in *Renfro*, the appellate court held that in order to determine the degree of theft, one ordinarily assesses the fair market value of the stolen property. However, "under circumstances where, for example, the [stolen] property has a unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value. Otherwise, valuable property rights in certain kinds of property vitally needed in industry would be seriously jeopardized by the mere fact that once stolen the only remaining use for such property, and hence the only market therefor, is as 'salvage.'" (*Id.* at p. 924.) Therefore, "under these circumstances the term 'market value' is synonymous with the term 'replacement value.'" (*Ibid.*) The *Renfro* court concluded that because the cable defendant stole was made to specification and used only by telephone companies, it was unique. Under these circumstances, the replacement cost of the cable was equal to its market value. (*Id.* at pp. 924-925.)

The owner of the property may testify as to its value. (*People v. Coleman* (1963) 222 Cal.App.2d 358, 361; *People v. Lenahan* (1940) 38 Cal.App.2d 39, 41; *People v.*

*Haney* (1932) 126 Cal.App. 473, 475-476.) Value may be proved by opinion evidence or circumstantial evidence. The testimony of an owner as to the value of the property may be sufficient. (See Evid. Code, § 813; *People v. More* (1935) 10 Cal.App.2d 144, 145.) "The weight to be given the owner's testimony as to value is for the trier of fact …." (*People v. Henderson* (1965) 238 Cal.App.2d 566, 567.)

In the present matter, Soest, who operated the storage facility on July 23, 2011, testified that 18 metal pallets were stolen. Soest described each pallet as approximately four-foot by four-foot square and six inches thick, made of steel, and weighing about 100 pounds. The pallets were used "for placing wood pallets with materials on to store on a steel metal rack." According to Soest, repurchasing the pallets would cost about $300 per pallet, for a total cash value of $5,400, but he did not know what their scrap metal value would be. Soest explained that, although the exact pallets stolen were no longer manufactured, "pallets that are equal in size, construction and appearance for the most part" cost $300 each.

On cross-examination, Soest acknowledged that he had previously at the preliminary hearing "guesstimate[d]" that the "value" of the 18 pallets was about $2,500, which would make each pallet worth about $138.

Soest, as the owner of the pallets and familiar with them, was qualified to give an opinion on the value of the property. (*People v. Coleman, supra,* 222 Cal.App.2d at p. 361.) Because the pallets were used in the storage industry and had a limited market, the replacement cost of $5,400 was an accurate measure of the pallets' fair market value. But even if we were to determine the "value" at the lower price of $2,500 for the pallets, from this evidence, the jury could reasonably determine that the value of the stolen pallets exceeded the $950 required for a grand theft conviction.

**DISPOSITION**

The judgment is affirmed.

4.